IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JONI S.,[1] | ) | Civil Action No. 2:25-cv-11282-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Joni S. ("Plaintiff"), brought this action pursuant to Section 205(g) of the Social

Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision

of the Commissioner of Social Security Administration regarding her claim for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security

Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and

Recommendation ("R&R") pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United

States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends

the Court affirm the Commissioner's decision.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and for SSI on March 10, 2021, alleging a disability

onset date of April 14, 2017. (R. at 24.) Plaintiff was 37 years old on her alleged disability onset

date. (R. at 36.) Plaintiff claims disability due to, *inter alia*, nerve damage in left arm, degenerative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

disc disease, PTSD, level 2 bipolar, depression, enlarged heart, anxiety, and bladder issues. (R. at 286.) Plaintiff has a high school education and no past relevant work. (R. at 35–36.)

Her applications were denied initially and on reconsideration. (R. at 25.) After a hearing before an Administrative Law Judge ("ALJ") on July 11, 2024, the ALJ issued a decision on August 19, 2024, in which the ALJ found that Plaintiff was not disabled. (R. at 24–37.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

As background, Plaintiff previously filed applications for DIB and SSI on August 8, 2017, alleging a disability onset date of April 14, 2017. After a hearing before an Administrative Law Judge ("ALJ") on July 31, 2020, the ALJ issued a decision on September 21, 2020, in which the ALJ found that Plaintiff was not disabled. (R. at 64–78.) The Appeals Council denied Plaintiff's request for review, and Plaintiff then filed an action in the United States District Court for the District of South Carolina. The record shows, and the undersigned takes judicial notice,[2] that the District Court affirmed the Commissioner's decision on December 2, 2021.[3] (R. at 91–93.) The ALJ noted these prior applications in her decision as well as the September 21, 2020 ALJ decision and stated,

> I find that the conditions for reopening the Prior Decision are not met and the Prior Decision remains final and binding with regard to the period through September 21, 2020. Any discussion of the evidence for the period prior to this date is intended to illustrate the progression of the claimant's medical condition.

(R. at 24.)

---

[2] A federal court may take judicial notice of the contents of its own records, as well as those records and proceedings of other courts. *See Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970). Plaintiff previously filed an action in this court on March 18, 2021, and the District Judge issued an order affirming the Commissioner's decision on December 2, 2021. *See* Case No. 2:21-cv-00779-RMG.

[3] The ALJ's August 19, 2024 decision states that, "On December 2, 2021, the United States District Court for the District of South Carolina remanded this case to the Commissioner of Social Security for further administrative proceedings." (R. at 24.) This appears to be a scrivener's error, however, for the reasons stated above and in footnote 2.

2

In making the determination that the Plaintiff is not entitled to benefits with respect to Plaintiff's March 10, 2021 applications, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

(2)    The claimant has not engaged in substantial gainful activity since April 17, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: dysfunction of the left arm, degenerative disc disease of the lumbar spine, obesity, post-traumatic stress disorder, bipolar disorder, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps, occasionally climb stairs, never climb ladders, never climb ropes, never climb scaffolds, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, and/or occasionally crawl. The claimant cannot reach overhead with the left upper extremity. The claimant can have no exposure to hazards (i.e., unprotected heights, moving machinery, etc.). The claimant can perform simple, routine tasks in 2 hour blocks of time with no more than occasional public contact in the workplace. She is limited to only occasional, routine changes in work settings and duties.

(6)    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

(7)    The claimant was born on March 14, 1980, and was 37 years old, which is defined as a younger individual age 18–44, on April 14, 2017, the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

3

(9)     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from April 17, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 24–37.)

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB context); 42 U.S.C. § 1382c(a)(3)(A) (SSI context).[4]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social

---

[4] "[T]he definition of disability is the same under both DIB and SSI. . . ." *Morgan v. Saul*, 9:19-CV-1390-BHH-BM, 2020 WL 3318630, at *1 n.1 (D.S.C. June 3, 2020) (citing *Emberlin v. Astrue*, No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to her past relevant work, the burden shifts to the Commissioner to show that the claimant—considering her age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340

(4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## DISCUSSION

Plaintiff asserts that the ALJ erred in her assessment of Plaintiff's residual functional capacity ("RFC") by failing to "reconcile her findings of severe dysfunction of the left arm [] with her RFC determination which contained only that [Plaintiff] could not 'reach overhead with the left upper extremity.'" (Dkt. No. 9 at 15.) Relying largely on her subjective complaints, Plaintiff argues the ALJ failed to "adequately explain why she did not include manipulative limitations in

[Plaintiff's] RFC." (*Id*. at 16.) The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's limitations do not preclude all work activity. (Dkt. No. 10.)

Before considering the merits of Plaintiff's arguments for remand, the undersigned first summarizes the applicable standards.

### A.    Standards

A claimant's RFC, which represents "the most [she] can still do despite [her] limitations," is determined by assessing all relevant evidence in the case record, including "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(1), (a)(3); *see also Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. 20 C.F.R. § 404.1545(a)(3).

Social Security Ruling 96-8p further requires that an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) (noting that the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). Moreover, the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id*. Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by "a narrative discussion describing [ ] the evidence" that supports it. *Dowling*, 986 F.3d at 387 (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019))

7

(alteration in original); *see Woods*, 888 F.3d at 694 (explaining that "the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion") (internal quotation marks omitted) (emphasis in original). Thus, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311.

A claimant's statements are among the evidence the ALJ must consider and reconcile with the RFC assessment. SSR 16-3p provides a two-step process for evaluating an individual's symptoms.[5] First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). In the second step the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . ." *Id.* at *4. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ should "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* 20 C.F.R. § 404.1529(c)(4) provides that when evaluating a claimant's subjective statements about his or her symptoms, the ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which

---

[5] In March 2016 the Social Security Administration published SSR 16-3p, 2016 WL 1119029 (2016), which rescinds and supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. SSR 16-3p applies to determinations and decisions made on or after March 29, 2016. Thus, this regulation applies to the instant ALJ decision, which was decided on August 19, 2024. SSR 16-3p, 2017 WL 5180304, at *13 n.27 (S.S.A. Oct. 25, 2017) ("Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016."). Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors considered under SSR 96-7p.

there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you."

The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig v. Chafer*, 76 F.3d 585, 595–96 (4th Cir. 1996), but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p, 2017 WL 5180304, at *6; *see also Arakas*, 983 F.3d at 95 ("[T]he ALJ must consider the entire case record and may 'not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them." (quoting SSR 16-3p, 2016 WL 1119029, at *5)).

## B.     Analysis

As noted above, Plaintiff argues that the ALJ failed to properly account for Plaintiff's manipulative limitations in the RFC, specific to Plaintiff's left arm and hand. (Dkt. No. 9 at 14–16.) In arguing for a more restrictive RFC, Plaintiff largely relies on her ALJ hearing testimony that, *inter alia*, she is "losing control" over her "ring finger and [] pinky finger and [] palm on [her] left hand" and she has "trouble" with using her left hand to pick things up and hold a pencil to write. (*Id*. at 15; *see* R. at 53.) According to Plaintiff, the ALJ's error here is not harmless because the Vocational Expert testified that someone with Plaintiff's RFC who "was further limited to only occasional handling and fingering with the left hand" would preclude all work in the national economy. (*Id.* at 9, *see* R. at 58.) In response, the Commissioner asserts that the ALJ's evaluation of Plaintiff's subjective complaints and the record evidence allows for meaningful judicial review and her findings are supported by substantial evidence. (Dkt. No. 10 at 6–9.)

9

Upon careful review, the undersigned finds the ALJ created an accurate and logical bridge from the evidence to her conclusion that the RFC adequately accommodates Plaintiff's "dysfunction of the left arm" by precluding any "reach[ing] overhead with the left upper extremity." (R. at 29–30.) In her decision, the ALJ offered a detailed review of the medical evidence in this case both favorable and unfavorable, specific to Plaintiff's dysfunction of the left arm:[6]

> The claimant's dysfunction of the left arm and degenerative disc disease of the lumbar spine are severe medically determinable impairments. The claimant was diagnosed with dysfunction of the left arm, lumbar radiculopathy, and degenerative disc disease of the lumbar spine and is prescribed Norco and Meloxicam (Exhibits B15F, B4F, B1F, B3F, B5F, B6F, B7F, B9F, B14F, B15F, B16F, and B17F). Additionally, the claimant repeatedly reported daily chronic back pain and knee pain that causes discomfort (Exhibit B5F at 1). The claimant further reported that the nerve damage in her left arm was caused by a motor vehicle accident that occurred about 10 years ago (Hearing Testimony and Exhibits B15F, B4F, B1F, B3F, B5F, B6F, B7F, B9F, B14F, B15F, B16F, and B17F). The claimant also reported that she had difficulty sleeping, paralysis of the left arm and hand, and constant moderate back pain that radiates into her left upper extremity (Exhibit B12F). The record indicates she has had previous surgery on her left arm but continued to report difficulty grasping and lifting objects with her left hand and arm (Exhibit B12F). In addition, a January 2021 electromyography revealed moderate sensory polyneuropathy of her left hand and arm with left radial sensory nerve having prolonged distal peak latency of 3.3 milliseconds and all remaining nerves within normal limits (Exhibit B12F at 1). Moreover, an April 2022 x-ray showed facet arthropathy with significant spondylosis, osteophyte formation, and intervertebral disc space narrowing in the lumbar spine (Exhibit B6F at 10 and 49-50). In addition, in September 2022 MRI revealed multilevel degenerative disc disease in her lumbar spine with more advanced facet across the lower left spine with multilevel mild central canal narrowing, mild lateral recess narrowing, and shallow paracentral protrusion on left side at L1- L2 (Exhibit B7F at 65). Additionally, in April 2022 through May 2023, the claimant had low back pain with spasms, tenderness to palpation, reduced range of motion, and abnormal gait during exams (Exhibits B6F at 9, 15, 19-20, and 24-25 and B7F at 13, 18, 27, 34, and 119). Furthermore, in October 2023, the claimant had back pain with worsening symptoms, including tenderness to palpitation and decreased range of motion during exams (Exhibit B9F at 16-17). However, on October 16, 2023, urodynamic

---

[6] Because Plaintiff takes issue only with the ALJ's assessment of her left arm dysfunction, the undersigned focuses on the portions of the ALJ's decision pertaining to this impairment, which overlaps some with the ALJ's consideration of Plaintiff's degenerative disc disease.

studies showed evidence of cocaine and meth use, but no prescribed pain medication was detected in the urine sample (Exhibit B9F at 14 and 16- 17). In addition, the claimant tended to demonstrate no apparent sensory or motor deficits with grip strength of 5/5 in both upper extremities during exams (Exhibit B5F, B16F, B15F, B18F, B3F, B6F, B14F, and B7F). For example, the claimant had full range of motion in her spine, straight leg raise was negative bilaterally, and spine was midline with no deviations or curvatures upon exam (Exhibit B5F at 3). In addition, she was able to get up and down the examination table without no difficulty, did not require an assistive device with walking, balanced on one foot for about four seconds each, and was able to squat, stoop, and bend, and able to heel-toe walk in tandem (Exhibit B5F at 3). In addition, while she at times had an abnormal gait due to back pain, the claimant tended to have unremarkable joint range of motion, normal strength in all extremities without an assistive device, no tenderness to palpitation, and no deformities during exams (Exhibits B16F at 3, B15F at 4-5, B18F at 1, B3F at 9, B6F at 9-10, B14F at 36 and 43, and B7F at 34 and 120). These impairments are severe as they significantly limit the claimant to sedentary work, occasionally climb ramps, occasionally climb stairs, never climb ladders, never climb ropes, never climb scaffolds, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl, never reach overhead with the left upper extremity, and have no exposure to hazards (i.e., unprotected heights, moving machinery, etc.).

(R. at 31.)

Additionally, the ALJ expressly recognized Plaintiff's subjective statements specific to her alleged limitations from "nerve damage in the left arm" as follows:

She testified that the nerve damage in her arm impairment was caused by an accident and the nerve damage affects her ability to reach above her head, raise her arm to shoulder level, pick up things, hold things, and dress (i.e., raising her arm to shoulder level causes tingling, etc.).

(*Id.* at 30.) The ALJ concluded that Plaintiff's "statements about the intensity, persistence, and limiting effects of these symptoms, [] are partially inconsistent because the record demonstrates lesser limitations than the claimant's statements indicate." (R. at 33.) Here the ALJ noted, *inter alia*,

Although the record indicates that the claimant had a history of degenerative disc disease of the lumbar spine and body mass index of 56.08, it indicates that these impairments were not as severe as she alleged as evident by the claimant tending to have unremarkable joint range of motion, normal strength in all extremities without an assistive device, no tenderness to palpitation, and no deformities during

11

exams (Exhibits B16F at 3, B15F at 4-5, B18F at 1, B3F at 9, B6F at 9-10, B14F at 36, 43, and 79, and B7F at 34 and 120). In addition, the claimant had a history of being treated for dysfunction of the left arm, it indicates that this impairment was not as severe as she alleged as evident by diagnostic test showing moderate sensory polyneuropathy of her left hand and arm with left radial sensory nerve having prolonged distal peak latency of 3.3 milliseconds and all remaining nerves within normal limits (Exhibit B12F at 1). . . . Finally, that claimant's reported activities of daily living are functional (i.e., shops, drives, attends church, etc.) (Exhibits B2F at 2 and 8 and B5E).

(R. at 33.)

While Plaintiff takes issue with the ALJ's reliance on her activities of daily living as supportive of the RFC assessment (Dkt. No. 11 at 3–4), the underlying function report cited by the ALJ here does not contain any statements indicating manipulative limitations due to left arm dysfunction. (R. at 309–15.) For example, this November 12, 2023 function report allowed the claimant to check off various "items that your illnesses, injuries, or conditions affect." (R. at 314.) While Plaintiff checked numerous "items" including reaching, concentration, and bending, she did *not* check the item "using hands." (R. at 314.) Most relevant here, Plaintiff reported that she could not "pick up anything over 10 lbs." (R. at 309.) The ALJ's RFC assessment necessarily accommodates this limitation, as sedentary work is defined as "lifting no more than 10 pounds at a time." 20 CFR § 404.1567(a).

The ALJ further noted that she "fully considered the medical opinions and prior administrative medical findings" in assessing Plaintiff's RFC. (R. at 33.) Notably, *none* of those opinions and findings, as detailed by the ALJ, indicated that Plaintiff had any manipulative limitations or required accommodation for her left arm dysfunction beyond what is included in the RFC. (R. at 33–35, see also R. at 64–78, 94–103, 106–15, 118–39, 523–25.) Indeed, Plaintiff's April 5, 2022 consultative examiner documented that Plaintiff had "full range of motion" in her extremities with a grip strength of "5/5 in both upper extremities." (R.at 525.)

12

Based on the foregoing, the undersigned finds no error in the ALJ's evaluation of Plaintiff's left upper extremity. *See Jordan v. Berryhill*, No. 0:17-cv-2354-BHH, 2019 WL 1074819, at *4 (D.S.C. Mar. 7, 2019) (finding that ALJ properly considered claimant's limitations in determining RFC where the "decision as a whole reflect[ed] how she considered and weighed the evidence of record in determining Plaintiff's RFC"); *see also Hightower v. Kijakazi*, No. 4:21-cv-04192-TER, 2023 WL 1990371, at *6 (D.S.C. Feb. 14, 2023) ("The ALJ properly discounted allegations because they were inconsistent with the record and this is contemplated by the regulations which state that, in evaluating a claimant's symptoms, an ALJ should examine the entire case record, which includes the objective medical evidence, along with other relevant evidence.") (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)); *JESSE L. MOORE, Plaintiff v. ANDREW M. SAUL, Comm'r of Soc. Sec., Defendant*, No. 2:20-cv-00002, 2021 WL 1996112, at *10 (W.D. Va. Apr. 9, 2021) (finding no error in the ALJ's evaluation of claimant's pain where the ALJ "reviewed Moore's relevant medical history and his subjective allegations in detail before finding his statements regarding the severity of his limitations were not entirely credible because they were not fully supported by the objective medical evidence and his treatment history"; "The ALJ was entitled to find that the objective medical evidence outweighed Moore's subjective statements, and he provided a sufficient rationale for doing so."). Rather, the ALJ properly considered and resolved conflicting evidence, and it is not within the court's purview to second-guess her decision. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]."); *Ross v. Kijakazi*, No. 4:22-cv-00145-TER, 2022 WL 17248966, at *8 (D.S.C. Nov. 28, 2022) ("Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based

13

on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not consistent with the record.").

## CONCLUSION

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **AFFIRMED**.

IT IS SO RECOMMENDED.

June 16, 2026

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

14

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).